**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| **KUNLGUNDA DIRAUF, et al.,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**LAWRENCE S. BERGER, ECKART R. STRAUB, et al.,**<br><br>     **DefendantS.** |

Civ. No. 20-5601 (KM) (ESK)

**OPINION**

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

This is a financial fraud case involving parties residing in the United States and Germany. Plaintiffs are a group of German individuals who allege they were defrauded in a financial scheme perpetrated by the defendants. The defendants are numerous limited partnerships, a German business association, and two individuals: Lawrence Berger, a New Jersey resident who is accused of perpetrating the fraud, and Eckart Straub, a German citizen who is alleged to have assisted Berger with the fraud.

The plaintiffs initially brought this case in New Jersey state court, pleading claims under the federal RICO statute, 18 U.S.C. 1964(c), as well as numerous state law claims. Defendant Straub removed the case to federal court, claiming both federal question and diversity jurisdiction. The plaintiffs then withdrew the federal RICO claim, and I remanded the case to state court, concluding that a federal claim was now lacking, that diversity of citizenship, too, was lacking, and that I therefore lacked jurisdiction.

Defendant Straub now moves pursuant to Rule 60(b) to vacate that decision (DE 12); the plaintiffs move for sanctions against Defendant Straub, asserting that the motion to vacate is frivolous (DE 15); and Defendant Straub cross-moves for sanctions against plaintiffs on the ground that the plaintiffs' motion for sanctions is meritless and filed solely to intimidate (DE 21).

For the reasons stated below, I will **DENY** all three motions.

## I. BACKGROUND[1]

Though this case has a lengthy fact pattern stemming from the alleged complex financial fraud committed by the defendants, only a few facts are relevant to my decision. Essentially, the defendants, two individuals and several business associations and partnerships, are accused of inducing fifty German citizens to invest in commercial real estate projects in New Jersey, and then secretly looting the projects' assets. (Opp. at 4; Compl. ¶¶ 11–61.) Lawrence Berger, a New Jersey resident, is alleged to have been the principal actor in this fraudulent scheme. Eckart Straub, a German citizen, was the plaintiffs' trustee in the investment agreement through his solely-owned German business association Success Theuhandgesellschaft GMBH ("STG"), and is alleged to have been Mr. Berger's accomplice. (Compl. ¶¶ 62–86.) The scheme was allegedly effectuated through the creation of nineteen New Jersey-based limited partnerships, defendants here, of which either STG or Straub were limited partners. (*Id.* 3; Opp. at 5.) Thus, for the purposes of my analysis under the relevant diversity jurisdiction statute, this suit was brought by

---

[1] Certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| DE __ | = | Docket entry number in this case |
| Compl. | = | Complaint (DE 1-1 through 1-3) |
| MTR | = | Defendants' Brief in Support of its Motion to Vacate (DE 12-1) |
| Opp. | = | Plaintiffs' Brief in Opposition to the Motion to Vacate (DE 13) |
| Reply | = | Defendants' Reply (DE 14) |
| Pl. Supp. Br. | = | Plaintiffs' Supplemental Brief (DE 19) |
| Def. Supp. Br. | = | Defendants' Supplemental Brief (DE 20) |
| Pl. MS | = | Plaintiffs' Brief in Support of its Motion for Sanctions (DE 15-3) |
| Def. MS | = | Defendants' Brief in Opposition to the Motion for Sanctions and Cross-Motion for Sanctions (DE 21-1) |

German plaintiffs against New Jersey and German defendants. *See* 28 U.S.C. § 1332(a)(2).

Plaintiffs commenced this action by filing a complaint in the Superior Court of New Jersey, Morris County on September 12, 2019. (Compl.) Defendant Straub, with the consent of his co-defendants, removed the action to this Court by filing a notice of removal on May 6, 2020. (DE 1.) The notice cited both federal question and diversity jurisdiction as grounds for removal. (*Id.* ¶¶ 7–13.) A week later, on May 12, 2020, plaintiffs moved to voluntarily dismiss their federal RICO claim pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).[2] (DE 6.) The next day, I remanded the case to Morris County Superior Court, concluding that: (1) because there were no federal claims remaining in the case, I no longer had jurisdiction over the case pursuant to 28 U.S.C. § 1331 (federal question); (2) the presence of German citizens as both plaintiffs and defendants destroyed complete diversity, so I lacked jurisdiction over the case pursuant to 28 U.S.C. § 1332 (diversity jurisdiction); and (3) because defendant Berger was a citizen of New Jersey, removal on diversity grounds would have, in any event, been precluded by the "forum defendant" rule set out in 28 U.S.C. § 1441(b)(2). (DE 10.)

Straub and STG moved to vacate my remand order, arguing that "extraordinary circumstances" require that I reconsider that order. (MTR at 1.) Specifically, they assert that it was a violation of their due process rights for the action to be remanded before they were permitted to be heard on that issue and that they were entitled to a federal forum. Had they been heard, they assert, they would have argued that (1) plaintiff's dismissal of the federal RICO claim was a nullity because it was done pursuant to Fed. R. Civ. P. 41(a) rather than Fed. R. Civ. P. 15; (2) I should first have ruled on defendants' motion to dismiss for lack of personal jurisdiction before remanding based on lack of

---

[2] As will be discussed below, this was procedurally improper. Plaintiffs should have amended their complaint pursuant to Federal Rule of Civil Procedure 15, not *via* Rule 41.

subject matter jurisdiction; (3) I should have considered whether defendant Straub was an indispensable party before considering subject matter jurisdiction; (4) the statutory provision which controls diversity jurisdiction in this matter should be read not to require complete diversity; (5) the court should have exercised supplemental jurisdiction over the state law claims after the federal claims were dismissed because the plaintiffs were engaged in forum manipulation; and (6) I abused my discretion by failing to write into the record my analysis of the factors controlling whether supplemental jurisdiction ought to be exercised. (*See generally* MTR; Reply.)

The parties fully briefed these issues, (MTR; Opp.; Reply), and submitted supplemental briefs in response to my request that they address the following questions: (1) whether the plaintiffs should have been permitted to dismiss their RICO claim under Fed. R. Civ. P. 15; (2) whether the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2) prevented removal in the first place; and (3) what was the identity and citizenship of the members of the limited partnership defendants. (DE 16; Def. Supp. Br.; Pl. Supp. Br.)

In response to the motion to vacate, plaintiffs moved for sanctions against Elliot D. Ostrove and Epstein Ostrove, LLC, counsel for Straub and STG, asserting that the motion to vacate was frivolous and dilatory. (Pl. MS.) Ostrove opposed the motion, asserting that the motion to vacate was not frivolous, and filed a cross-motion for sanctions against plaintiffs on the ground that their sanctions motion was intended solely to intimidate Ostrove into withdrawing the motion to vacate. (Def. MS.)

On October 28, 2020, the Honorable Peter Bogaard, J.S.C., of the Morris County Superior Court, denied a motion to dismiss filed in that court by Lawrence Berger and various limited partnerships. The parties' description of the motion and decision is scanty, but it appears that Judge Bogaard's decision does not directly bear on the motions before this Court. (DE 24, 25.)

4

## II.    MOTION TO VACATE

### 1.  Standard of Review

#### a.  Federal Rule of Civil Procedure 60(b)

Defendants have brought their motion to vacate and reopen the order of remand under Rule 60(b). Because defendants claim to have been denied a procedural opportunity to be heard, I have in an abundance of caution elected not to rely on the high Rule 60(b) threshold for relief. Consequently, the arguments for and against finding "extraordinary circumstances" are largely moot. Because the parties have entwined the Rule 60(b) standards with the merits, however, I briefly discuss them here.

Federal Rule of Civil Procedure Rule 60(b) authorizes the Court to issue relief from a final judgment, order, or proceeding. The Rule provides as follows:

> On motion and just terms, the court may relieve a party or its legal representative from final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable negligence;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justified relief.

"The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002) (citing *Boughner v. Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)). The movant under Rule 60(b) "bears a heavy burden." *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967), *cert. denied*, 389 U.S. 1014 (1967). Rule 60(b) relief is "extraordinary relief which should be granted

5

only where extraordinary justifying circumstances are present." *Id.*; *see also Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987).

A finding of extraordinary circumstances "requires the moving party to show that, without relief from judgment, 'an extreme and unexpected hardship will result.'" *Selby v. Inspira Med. Ctrs., Inc.*, 2020 WL 549407 at *1 (D.N.J. Feb. 4, 2020). It is defendant's burden to "clearly establish" and "fully substantiate[] by adequate proof" the "exceptional character" of the circumstances justifying relief. *Id.*

Defendants argue that, if denied relief from my order of remand, they will suffer extreme and unexpected hardship, for two reasons: because they were deprived their opportunity to litigate this case in federal court (MTR at 8), and because they had no opportunity to be heard before I remanded this case (Reply 2–3.) Inability to litigate in federal court is not an extreme hardship, and defendants will still be able to fully defend themselves against plaintiffs' allegations in New Jersey state court, a fully adequate forum perfectly capable of delivering a just resolution to this case.[3]

---

[3]     Inability to litigate in federal court is not an extraordinary circumstance when one has "a full and fair opportunity to litigate in state court." *Westfield Ins. Co. v. Estate of McMahan*, 2017 WL 3929307 at *4 (W.D. Ky. Sept. 6, 2017). That is true even when, unlike defendants here, a party ordinarily would have initially been entitled to a federal forum but the opposing party sculpted its claims to deprive them of federal jurisdiction. *Id.* at 1, 4; *see also Selby*, 2020 WL 549407 at *2. Defendants' inability to satisfy their preference for federal litigation is not an extraordinary hardship. Indeed, the removal, though reversed, has already afforded them one significant benefit: the plaintiff's abandonment of the federal RICO claim.

Nor have defendants faced an extreme hardship because they were not heard before remand. "[W]hile undoubtedly the appropriate practice for a district court which proposes remanding a removed matter for lack of subject matter jurisdiction would be to invite the parties to submit their views before it enters the order for remand . . . still it is possible that the district court might remand the case without seeking the parties' views." *Mints v. Educational Testing Serv.*, 99 F.3d 1253, 1258–59 (3d Cir. 1996); *see also Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742, 750 (3d Cir. 1995). The cases cited by Defendants involve dismissal, not remand, a different matter. *See Neiderhiser v. Berwick*, 840 F.2d 213, 216 (3d Cir. 1988); *America Federation of Musicians v. Bonatz*, 475 F.2d 433 (3d Cir. 1973); *Groh v. Brooks*, 421 F.2d 589, 594–95 (3d Cir. 1970).

But it does not really matter. Defendants' objections that remand was inappropriate, or that they should have been heard prior to remand, have been and are being fully addressed by this opinion. Defendants argue that the matter is not so straightforward as it appeared to be when the Court entered its order. Fair enough: I have entertained their objection, permitted them to fully brief the matter, and indeed solicited supplemental briefing on some of the points they raised. I have considered their arguments anew, without reference to the barriers to relief erected by Rule 60(b).

Thus, I am confident that no hardship, in the sense of procedural unfairness, has been visited on the defendants. I now consider their arguments in opposition to remand. As I will explain below, none of defendants' arguments establish that they were prejudiced or establish that remand was improper.

### b. Federal Rule of Civil Procedure 15

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (c), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "[L]eave [to amend] shall be freely given when justice so requires." *Id.* Accordingly, the courts "have shown a strong liberality … in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)).

In *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), the Supreme Court put its stamp on the liberal amendment policy, while identifying a number of factors relevant to a motion to amend under Rule 15(a). In determining a motion for leave to amend, Courts consider the following factors:

(1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

 "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (internal quotation and citation omitted). Thus "delay," for example, entails more than the mere passage of time; to warrant denial of leave to amend, it must be "undue" or prejudicial. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). The Court should deny leave only when the *Foman* factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

### c. Discussion

### i.   Federal Rules 15 and 41

Defendants first argue that plaintiffs' withdrawal of their only federal claim was ineffective; that therefore this case presents a federal question; and that therefore it should not be remanded to state court.

Plaintiffs submitted a notice of voluntary dismissal of their federal RICO claim under Federal Rule of Civil Procedure 41(a)(1)(A)(i). (DE 6) Under that provision, a plaintiff may dismiss "*an action* without a court order by filing" "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." *Id.* (emphasis added). Because that rule "applies to dismissals of entire actions and not to individual claims," *New W. Urban Renewal Co. v. Viacom, Inc.*, 230 F. Supp. 2d 568, 571 n.4 (D.N.J. 2002), "a plaintiff wishing to withdraw particular claims without prejudice must [instead] amend the complaint pursuant to Fed. R. Civ. P. 15(a)," *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 WL 5770385 at *2 (D.N.J. Sept. 30, 2015).

Defendants have a point, but it is a technical one at best. The plaintiffs are masters of their claims, and would have been granted leave to amend their complaint to drop the RICO claim pursuant to Rule 15(a)(2). (DE 6.) No court is going to force the plaintiffs to pursue a federal RICO claim if they do not wish to do so.[4] At this very early stage, the plaintiffs would be permitted to amend their complaint pursuant to Fed. R. Civ. P. 15(a)(2). Several courts have so concluded, and have dealt with the problem by simply construing a Rule 41 request as an application under Rule 15. *See Chan v. County of Lancaster*, 2013 WL 2412168 at *16 (E.D. Pa. June 4, 2013) (construing dismissal of claim under Rule 41 as amendment pursuant to Rule 15(a)(2)); *Stache v. Mid Mon Valley Transit Auth.*, 2020 WL 1477199 at *2 (W.D. Pa. Mar. 26, 2020) (same); *Ctr. for Orthopedics*, 2015 WL 5770385 at *3 ("the Court can treat the request . . . as a motion to amend [the] complaint").

The touchstone for granting or denying amendment pursuant to Rule 15(a)(2) is prejudice to the opposing party. I do not perceive any prejudice here. As previously discussed, dropping the RICO claim would tend to deny defendants a federal forum, but they are not entitled to one when they have a "a full and fair opportunity to litigate in state court." *Westfield*, 2017 WL 3929307 at *4. Nor will the Court construe "prejudice" as including the ability to opportunistically take advantage of a procedural misstep. The amendment seeks to drop, not add, a claim, so it cannot be characterized as futile. It was undertaken immediately after removal, so there has been no undue delay or wasted expenditure on federal court litigation, aside from defendants' efforts to oppose remand. *Great Western Mining*, 615 F.3d at 174. Consequently, amendment would not be unjust, and I would have granted amendment if the application had been labeled as such. As a result, treating the Rule 41

---

[4]     Should defendants wish to convert the withdrawal to with-prejudice status, they may move to do so. At any rate, an attempt to reinstate such a claim after withdrawing it to defeat jurisdiction would surely meet a frosty judicial reception (and would no doubt provoke a second notice of removal).

dismissal as an amendment works no hardship on the defendants and is therefore not a sufficient ground to compel me to vacate my remand order.[5]

There is no federal claim in the case. I therefore turn to the issue of diversity jurisdiction.

### ii.   Subject Matter Jurisdiction Under 28 U.S.C. § 1332(a)(2)

Defendants assert that 28 U.S.C. § 1332(a)(2) confers diversity jurisdiction over suits between alien plaintiffs and a group of defendants consisting of both citizens of a state and aliens. That is incorrect. The statutory provision creating diversity jurisdiction for suits involving aliens, 28 U.S.C. § 1332(a)(2), reads as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
>
> . . . .
>
> (2) citizens of a state and citizens or subjects of a foreign state . . . .

Under controlling Third Circuit precedent interpreting § 1332(a)(2), complete diversity is required:

> That diversity jurisdiction exists under this statute only when there is complete diversity between the parties is a firmly rooted principle, first established in the venerable case of *Strawbridge v. Curtiss*, and recently reaffirmed by the Supreme Court in *Owen Equipment & Erection Co. v. Kroger*. This requirement pertains to suits between aliens as well to suits between citizens. Thus, the

---

[5]   The unspoken premise of the defendants' argument seems to be that because of a procedural blunder, the opportunity to challenge this court's subject matter jurisdiction is now lost. But jurisdiction does not arise by estoppel, and a federal court which lacks jurisdiction at any point has no power to proceed further. So hypothetically, even if the federal claim were dropped now (still before any proceedings of consequence have occurred in this court), the court would lose its federal-question jurisdiction.

principle has been applied *to deny jurisdiction in an action by an alien against citizens of a state and another alien.*

*Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir. 1980) (internal citations omitted) (emphasis added). Thus, the Third Circuit has been clear that suits, such as this one, in which aliens are on both sides of the dispute, do not fall under the court's (a)(2) diversity jurisdiction.

The very case on which defendants rely only confirms this principle. In *Dresser Indus. v. Underwriters at Lloyd's of London*, 106 F.3d 494 (3d Cir. 1980), the Court of Appeals reaffirmed the holding of *Field* that "[a]pplying the complete diversity rule [to §1332(a)(2)] makes sense . . . . [S]ection 1332(a)(2) only grants jurisdiction in cases between aliens and citizens. Cases between aliens on one side and aliens and citizens on the other, therefore, do not fit the jurisdictional pigeonhole." *Id.* at 494.[6]

Defendants argue that the Court should disregard this longstanding precedent on the basis of a few law review articles and some oblique statements in Supreme Court decisions over the past two centuries suggesting that *Strawbridge* may have overstated its holding. (MTR at 15–19.) I am not free to disregard Third Circuit precedent on such a minimal showing. Diversity jurisdiction is lacking.

### iii.   28 U.S.C. § 1367(c)

Defendants argue that I should nevertheless have exercised supplemental jurisdiction over the state law claims pursuant to my discretion under 28 U.S.C. § 1367(c), and that I was required to issue a detailed opinion explaining my discretionary decision. (Reply at 7–9.)

Under 28 U.S.C. § 1367:

(a) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such

---

[6]   *Dresser* reaffirmed the *Field* holding, however, in the course of contrasting § 1332(a)(2) with the jurisdictional provision it was construing, § 1332(a)(3).

original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

. . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

. . . .

(3) the district court has dismissed all claims over which it has original jurisdiction

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Bush v. City of Philadelphia*, 765 Fed. Appx. 843, 847 (3d Cir. 2019) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). That discretion, however, "is not unbridled. Rather, the decision 'should be based on considerations of judicial economy, convenience and fairness to the litigants.'" *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (*see also De Ritis v. McGarrigle*, 861 F.3d 444, 459 n.13 (3d Cir. 2017)).

The "presumptive rule is that the state claims shall be dismissed, unless reasons of economy and fairness dictate otherwise. Where a case has been substantially litigated for some time, it may be a proper exercise of discretion to retain it . . . . Where, on the other hand, time and effort will not be wasted and the case is nowhere close to trial, remand may be the proper course." *Trotta v. Borough of Bogotta*, 2016 WL 3265689 at *11 (D.N.J. June 6, 2016) (refusing remand where case had been "substantially litigated" including "significant discovery") (internal citations omitted); *see also Mission Motorcycles, Inc. v. Ip*, 2016 WL 126364 at *3 (D.N.J. Jan. 11, 2016). It is defendant's obligation to provide an "affirmative justification" for retaining jurisdiction. *N. Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 494 n.11 (3d Cir. 2019).

I first address defendants' procedural argument. They assert that I was obligated to make explicit the foregoing analysis in my remand order, and that failure to do so requires that I grant their motion to vacate. (Reply 9–10.) They

are incorrect. "The Third Circuit has expressed that it 'prefers that a district court set forth its basis for dismissing state claims on a jurisdictional basis. This, however, is a preference and not a requirement.'" *RLR Invs., LLC v. Town of Kearny*, 2009 WL 1873587 at *9 (D.N.J. June 29, 2009). Thus, "[n]otwithstanding the lack of a district court opinion, [courts may] conclude that the district court exercised its discretion." *Sparks v. Hersey*, 661 F.2d 30, 33 (3d Cir. 1980).

In fact, the Third Circuit has already approved of a remand order fitting this precise pattern. In *Figueroa v. Buccaneer Hotel*, a district court stated only that "as the remaining counts state no federal cause of action, this case will be dismissed with prejudice for lack of subject matter jurisdiction." 188 F.3d 172, 181 (3d Cir. 1999). The Third Circuit upheld that decision despite a party's complaint that the opinion was not more detailed, concluding that the court's statement allowed the Circuit to "readily determine that the District Court dismissed a claimant's remaining claims based on a consideration enumerated in section 1367(c)." *Id.* My decision was considerably more detailed: I explained that the asserted basis for federal question removal had been mooted by the plaintiff's withdrawal of the federal RICO claim, and then explained why diversity jurisdiction was lacking. (DE 10.)

The procedural point, however, need not detain the court any further, because it is easily mooted. My rationale should have been clear from the surrounding circumstances, but no reviewing court need reconstruct it. I state my substantive grounds for declining supplemental jurisdiction in more detail here.

This matter does not present a substantial case for supplemental jurisdiction; indeed, it presents the classic scenario for declining supplemental jurisdiction. To the extent further specific reasons may be required, here they are: When I remanded this case, it had been before me for just seven days. (DE 1, 10.) No discovery had been taken, and defendants had just filed their first motion (DE 8), which was aimed at dismissal for lack of personal jurisdiction.

13

That motion applies in state court just as it does in federal court;[7] no effort was wasted, and no inefficiency would result from requiring it to be heard on remand. Because the claim of federal subject matter jurisdiction was so insubstantial as to require dismissal at the very outset, there is no strong reason of federal policy or judicial economy favoring retention of state claims. The plaintiffs' remaining claims were all based in state law and would not ordinarily have been before me but for the invalid claim of federal subject matter jurisdiction. I conclude now, as I did then, that the § 1367(c) factors did not overcome the presumption in favor of remand.

In their supplemental brief, the defendants attempt to stand this analysis on its head, arguing that remand should be denied because there is "no long history of activity in state court." (Def. Supp. Br. at 4.) That is irrelevant where the federal court lacks jurisdiction and possessed it, if at all, for a period of days. *Erienet, Inc. v. Velocity Net*, 156 F.3d 513, 516 (3d Cir. 1998) ("[F]ederal courts are courts of limited jurisdiction"); *see also Schneller v. Crozer Chester Med. Ctr.*, 387 Fed. Appx. 289, 292 (3d Cir. 2010) (Federal courts "may only decide cases as authorized by Congress or the Constitution"). I am not authorized to, and will not, seek jurisdiction over a case that clearly belongs in state court simply because it was not in state court very long before its 7-day sojourn here.

Defendants urge that plaintiffs have engaged in forum "manipulation," which may be considered as a factor under § 1367(c). *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 356 n.12 (1988); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 232–33 (3d Cir. 1995). They may be correct in some very general sense. A plaintiff may, however, choose its forum, and may select causes of action that can only be heard in one forum or the other. To find "manipulation," I would look for further indications of bad faith, such as an

---

[7]     Indeed, the New Jersey long-arm statute is specifically designed to extend to the due process limits of the federal constitution. *See, e.g., Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c))

attempt to nullify adverse rulings by switching courts. At any rate, however, forum manipulation is but one factor under § 1367(c). *See Trans Penn*, 50 F.3d at 233 ("an effort by the plaintiff to manipulate the forum should be considered along with other factors in the decision whether to remand"). It is to be "considered among the factors of economy, convenience, fairness, and comity," *Mazzola v. AmeriChoice of N.J., Inc.*, 2013 WL 6022345 at *2 (D.N.J. Sept. 23, 2009).

None of those other factors are sufficiently strong to justify this Court's retention of a pure state law case. Supplemental jurisdiction is routinely and presumptively rejected where, as here, a court "has not expended substantial resources on [a] case," which was "in its initial phases," and where a plaintiff is attempting to vindicate "substantive state rights." *Cabibbo v. Parsons Inspection & Maintenance Corp.*, 2009 WL 3074731 at *7 (D.N.J. Sept. 23, 2009).

### iv.   Jurisdictional Sequencing

Defendants assert that I should have considered personal jurisdiction before considering subject matter jurisdiction, because subject matter jurisdiction presents complex issues, but personal jurisdiction does not. (MTR at 10–13.) They acknowledge, however, that while "jurisdictional questions ordinarily must precede merits determinations in dispositional order, *Ruhrgas* held that there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas Ag v. Marathon Oil Corp.*, 526 U.S. 574, 584 (1999)); *see also Fahie v. People of the Virgin Islands*, 858 F.3d 162, 168 (3d Cir. 2017); (*see* Reply at 11.)

Indeed, to the extent there is Supreme Court guidance as to which jurisdictional question ought to come first, that guidance suggests that ordinarily subject matter jurisdiction should have priority: "[I]n most instances subject-matter jurisdiction will involve no arduous inquiry . . . . In such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas*, 526 U.S. at 587–88.

15

Defendants argue that they have been subject to extraordinary hardship because I did not hear their arguments in favor of considering personal jurisdiction ahead of subject matter jurisdiction. The order of decision, however, is a discretionary matter. That said, I consider in the alternative defendants' proffered reason for deciding personal jurisdiction first: *i.e.,* that subject matter jurisdiction is comparatively a complex issue.

As discussed above, determining subject matter jurisdiction in this case requires no more than a straightforward application of black letter law. The factual questions boil down to the following: (a) Is a federal claim asserted? and (b) Of what nation or state are the parties citizens? Since it rests primarily on the face of the complaint and involves "no arduous inquiry," subject matter jurisdiction was a proper basis for remand.[8]

Defendants also argue that if I had granted their motion to dismiss on personal jurisdiction grounds and removed them from the case, there would be complete diversity. That argument overlooks the citizenship of the defendants' limited partnerships, which are not a part of defendants' motion to dismiss on grounds of personal jurisdiction. Those limited partnerships have German citizenship by virtue of STG's role as their limited partner. *See Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337, 350 (3d Cir. 2013) ("the citizenship of an unincorporated association like a limited [partnership] is determined by looking to the citizenship of its members"); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (this includes passive owners such as limited partners). Thus, even if I were obligated to consider personal jurisdiction first

---

[8]     Personal jurisdiction, on the other hand, would involve a fact-sensitive inquiry into the defendants' forum-related activities and whether the cause of action in question relates to the in-state activity. *Daimler AG v. Baumann*, 571 U.S. 117, 127 n.19 (2014). Plaintiffs assert that defendants Straub and STG had significant contacts with New Jersey, including "directing Plaintiffs' investment activities into New Jersey" and having an intimate relationship with Berger's New Jersey-based scheme. (Opp. at 9 n.4.) Whether true or false, such factual contentions would inevitably require more complex analysis and fact finding.

(which I am not) and even if defendants Straub and STG were dismissed (which they have not been), I would not possess diversity jurisdiction.

### v.   Indispensability

Defendants also argue that I should have reached the issue of whether Straub is an indispensable party before remanding on the basis of subject matter jurisdiction. For the same reasons expressed in the preceding section, they argue, Straub's dismissal on this distinct basis would restore diversity. As explained above, however, eliminating Straub would still not render the parties diverse; the limited partnerships, German citizens by virtue of their partners' citizenship, would remain in the case.

Furthermore, a party is dispensable only if the Court can accord complete relief among existing parties without it, or where the party would not be subject to inconsistent obligations or otherwise practically impeded from protecting its claimed interests by a judgment in its absence. Fed. R. Civ. P. 19(a); *see also Foster Owners Co. LLC v. Farrell*, 2015 U.S. Dist. LEXIS 21588 at *7–8 (D.N.J. Feb. 23, 2015). Straub offers neither substantial facts nor persuasive arguments to suggest that either of those circumstances is true of him or STG here.

For all of the foregoing reasons, the motion to reconsider and vacate the order of remand is denied.[9]

---

[9]    A removing defendant, Mr. Berger, is a citizen of New Jersey. My original order invoked the forum-defendant rule set forth in 28 U.S.C. 1441(b)(2):

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Removability under § 1441(b), however, is "determined at the time the petition for removal is filed." *Devore v. Transport Technology Corp.*, 914 F. Supp. 335, 357 (W.D. Mo. 1996); *see also Arts v. Carlson, Inc.*, 2010 WL 4282102 at *1 (D.N.J. Oct. 22, 2010). It follows that Section 1441(b) does not "work[] retroactively after [a proper] removal. Another statute, 28 U.S.C. § 1447, specifically controls the procedures the Court should take after removal." *Devore*, 914 F. Supp. at 357. Here, removal was proper at the moment it occurred on the basis of a federal question; it was incorrect, however, on the alternative basis of diversity.

## III.    MOTIONS FOR SANCTIONS

There are two motions for sanctions before the court. Plaintiffs move for sanctions; defendants move to sanction them for doing so. I will deny both motions.

Rule 11 of the Federal Rules of Civil Procedure requires that any "pleading, written motion, or other paper" filed or submitted to the Court 'not be[] presented for any improper purpose, such as to harass, cause unnecessary delayed, or needlessly increase the cost of litigation.'" Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corporation*, 667 Fed. Appx. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings, *Howe v. Litwack*, 579 Fed. Appx. 110, 115 (3d Cir. 2014). Rule 11 "does not function as an automatic penalty for losing and should not be applied to adventuresome, though responsible, lawyering that advocates creative legal theories." *Skoorka v. Kean Univ.*, 2017 WL 6539449 at *3 (D.N.J. Dec. 21, 2017).

"It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls with the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 Fed. Appx. 174, 185 (3d Cir. 2008) (quoting *Garry v. Braddock Cemetery*, 517 F.3d 195, 201 n.6 (3d Cir. 2008)). Rule 11 "is not an appropriate vehicle for resolving legal or factual disputes," or "addressing the strength or merits of a claim." *Strikeforce Techs., Inc. v.*

---

I will not further consider the issue of the application of the forum-defendant rule to a "mixed" case, or one in which a federal claim is dropped, because it is superfluous here. It is the court's ruling that neither federal question nor diversity jurisdiction is present that compels remand. I note in passing, however, that cases have invoked the logic of the forum-defendant rule in support of a § 1447 remand under just these circumstances. *See Trask v. Kasenetz*, 818 F. Supp. 39 (E.D.N.Y. 1993) ("No provision of the Judiciary Act compels this court to retain jurisdiction over a case removed by citizens of this state based upon a federal claim that has been dismissed, even when the parties are citizens of different states. The underlying logic of the statutory scheme suggests, to the contrary, that the court should remand the case to the New York state court"); *Maher v. Moore College of Art & Design*, 1999 WL 88964 at *4 n.2 (E.D. Pa. Feb. 19, 1999) (concluding that "a properly removed case must be remanded if a change in events makes diversity of citizenship the only basis for federal jurisdiction, but a defendant is a citizen of the forum state").

*WhiteSky Inc.*, 2013 WL 5574643 at *4 (D.N.J. Oct. 9, 2013). "Thus, the mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be thought to establish a rule violation." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). "Sanctions are not warranted merely because claims are weak. Nor would I impose sanctions merely because a party's allegations were ineptly or confusingly presented. Indeed, to grant sanctions on this basis risks chilling legitimate advocacy." *Cresci v. Gyess*, 2019 WL 1529964 at *4 (D.N.J. Apr. 8, 2019).

### 1. Plaintiffs' Motion for Sanctions

Plaintiffs assert that sanctions are proper here because defendants' arguments are frivolous. In particular, they claim that: (1) defendants ignored Rule 60(b) and made a "plainly absurd" argument that they suffered extraordinary circumstances by being unable to bring their claims in a federal forum (Pl. MS at 6); (2) their claim that I should have considered personal jurisdiction before subject matter jurisdiction misrepresented precedent and was frivolous,(*id.* at 6–7); (3) they intentionally ignored that their arguments regarding diversity jurisdiction have been unambiguously rejected, and misrepresented the Third Circuit's decision in *Dresser* (*id.* at 7–9); and (4) the motion was dilatory and brought in bad faith (*id.* at 9–10.) I will deny this motion.

First, while I ultimately ruled against defendants' claim to relief under Rule 60(b), and though their arguments were not particularly convincing, "[s]anctions are not warranted merely because claims are weak." *Cresci*, 2019 WL 1529964 at *4. Furthermore, defendants did not solely assert that they lost their right to a federal forum, but also argued that they were deprived of an opportunity to be heard. (MTR at 8; Reply at 2–3.) I reacted *sua sponte* to what appeared to be, and was, as it turns out, a lack of subject matter jurisdiction. I do not consider, however, that defendants evinced bad faith in seeking an opportunity to be heard on the matter. I have now given them a full and fair

19

opportunity to be heard; although I did not ultimately accept their arguments, I will not chill legitimate advocacy by punishing a party for failing to convince.

Second, I reject the assertion that defendants misrepresented precedent about jurisdictional sequencing. They made clear in their initial brief that I was permitted to sequence my jurisdictional order according to my discretion, and sought to convince me that I should have exercised my discretion in a way they regarded as advantageous to them. (MTR at 10–13.)

There is admittedly some incongruity in defendants' theory that they suffered extreme hardship in connection with their inability to press their jurisdictional sequencing arguments. As I say, there was no such legal entitlement. And, of course, the only consequence to the defendants was that they were sent to argue the same personal jurisdiction motion in a perfectly adequate state court forum. Nevertheless, I will not sanction a party simply for making weak arguments.

Third, defendants did not commit sanctionable conduct by arguing against the longstanding precedent controlling the proper application of 28 U.S.C. § 1332(a)(2). Parties are entitled to challenge longstanding precedent: if they were not, or if they risked paying a fine every time they did so, legitimate advocacy would clearly be impermissibly chilled, and wrongly decided cases would be insulated from meritorious challenges. *Cresci*, 2019 WL 1529964 at *4. I do not find that defendants' arguments were meritorious here, but they were permitted to make them.

Nor did defendants misrepresent *Dresser Industries v. Underwriters at Lloyd's of London*, 106 F.3d 494 (3d Cir. 1997) in their motion to reconsider. They argued that "[t]he Third Circuit . . . came to the conclusion that complete diversity should not be required when considering § 1332(a)(3)," and argued that the Court might, if it wished, "determine that the requirements of complete diversity do not apply to 28 U.S.C. § 1332(a)(2)." (MTR at 17.) Of course, *Dresser* itself drew the relevant contrast between (a)(3) and (a)(2), *id.* at 498, and there would still be the binding precedent of *Field, supra,* cited in *Dresser,*

to contend with. Defendants further argued that *Dresser*'s logic was similar to that of certain commentators who have criticized the complete diversity requirement for § 1332(a)(2). (*Id.*) I reject defendants' argument as being against the weight of precedent, but they have not committed sanctionable conduct by making it.

Fourth, I reject plaintiffs' assertion that defendants acted in bad faith, because it lacks factual support. There is nothing in the record indicating that defendants made this motion for a dilatory purpose. As defendants note, some of their assertions, such as their procedural argument regarding plaintiffs' erroneous attempt to amend their complaint via Rule 41, had merit.

I therefore deny the plaintiffs' motion for sanctions.

### 2. Defendants' Motion for Sanctions

Defendants cross-move for sanctions against plaintiffs on the ground that plaintiffs' Rule 11 motion is itself premature, meritless, and intended solely to intimidate. (Def. MS at 13–14.) I will deny this motion as well. Though I have declined to impose sanctions against defendants, their motion was fairly flimsy, for the reasons stated above. Nor is there any evidence that the defendants' motion for sanctions was intended solely to intimidate. *See Leja v. Schmidt Mfg.*, 2005 WL 2009924 *5–6 (D.N.J. Aug. 15, 2005) (court's rejection of Rule 11 motion does not mean that the motion was therefore intended solely to bully or intimidate).

## IV.   CONCLUSION

For the reasons set forth above, the motions of the defendants to vacate the court's order of remand and impose sanctions are **DENIED**, and the plaintiffs' motion for sanctions is **DENIED**.

A separate order will issue.

Dated: December 11, 2020

/s/ Kevin McNulty
Hon. Kevin McNulty
United States District Judge